GREENBERG TRAURIG, LLP
WILLIAM Q. TRAN (SBN 210771)
E-mail: tranw@gtlaw
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949-732-6500
Facsimile: 949-732-6501

GREENBERG TRAURIG, LLP
DANIEL D. RUBENSTEIN (SBN 178896)
Email: rubensteind@gtlaw.com
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

Attorneys for Plaintiffs
KOHLER COMPANY and
ANN SACKS TILE AND STONE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| KOHLER COMPANY and ANN SACKS TILE AND STONE, INC., | CASE NO. '11CV1767 BEN CAB |
|---|---|
| Plaintiffs, | **COMPLAINT FOR:** |
| vs. | 1. Registration of Infringing Domain Names [15 U.S.C. § 1125(d)]; |
| DOMAINJET, INC.; JACK SUN; and DOES 1 through 10, inclusive, | 2. Use of Infringing Domain Names [15 U.S.C. § 1125(d)]; |
| Defendants. | 3. Trafficking in Infringing Domain Names [15 U.S.C. § 1125(d)]; |
| | 4. Trademark Infringement [15 U.S.C. § 1114]; and, |
| | 5. Dilution [15 U.S.C. § 1125(d)] |
| | **[DEMAND FOR JURY TRIAL]** |

COMPLAINT FOR REGISTRATION OF INFRINGING DOMAIN NAMES; DEMAND FOR JURY TRIAL
CHI 61,441,267v1 8-2-11

Plaintiffs Kohler Company ("Kohler") and Ann Sacks Tile and Stone, Inc. ("Ann Sacks," and collectively "Plaintiffs") allege as follows:

## STATEMENT OF THE CASE

1. Plaintiffs bring this action against Defendants Domainjet, Inc. ("Domainjet") and Jack Sun ("Sun") (collectively "Defendants") seeking relief pursuant to the Lanham Act for Defendants' acts of trademark infringement in violation of 15 U.S.C. § 1114 and dilution in violation of 15 U.S.C. § 1125(c), as well as pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), for Defendants' bad-faith registration, use, and trafficking of the domain names <kohlerinteriors.info>, <kohlerinteriors.us>, <kohlerpower.info>, <kohlerco.in>, and <annsacks.us> (collectively, the "Infringing Domain Names").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

3. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1391(b) and (c), as a substantial part of the events giving rise to this action occurred in this judicial district and, upon information and belief, Defendants reside in this judicial district.

## PARTIES AND PERSONAL JURISDICTION

4. Kohler is a Wisconsin corporation having its principal place of business at 444 Highland Drive, Kohler, Wisconsin 53044.

5. Ann Sacks is a wholly owned subsidiary of Kohler having its principal place of business at 8120 NE 33rd Drive, Portland, Oregon 97211.

6. Upon information and belief, Domainjet is a California corporation having its principal place of business at 1016 8th Ave, San Diego, California 92101.

7. Sun is a resident of California and is the current registrant of record for the Infringing Domain Names. Upon information and belief, Sun is an employee of Domainjet.

1

8. Upon information and belief, Doe is a resident of California and an employee of Domainjet. Doe is a manager or supervisor of Sun, and, upon information and belief, Doe directs and oversees the unlawful activities complained of in this Complaint.

9. At all times material to this action, Sun and Doe acted as agents, servants, or employees of Domainjet, and their actions described herein were committed within the scope of their employment with Domainjet. In doing such acts or failing to act as alleged in this Complaint, Sun, Doe, and Domainjet conspired to perpetrate the unlawful activities complained of in this Complaint.

## GENERAL ALLEGATIONS

### A.   Plaintiffs' Famous Trademarks

10. Kohler manufactures, distributes, and markets, among other things, engines, generators, plumbing products, furniture and home accessories, cabinetry and tile. Kohler's businesses include more than fifty manufacturing locations, twenty-six subsidiaries and affiliates, and dozens of sales offices located throughout the world.

11. Kohler's ideas, craftsmanship, and technology lead the industry in product design. With personnel and distribution operations spanning six continents, Kohler's products offer a superior level of quality over a broad range of price points.

12. Kohler owns numerous United States trademarks and service marks, the majority of which incorporate the element KOHLER (collectively, the "KOHLER FAMILY"), including:

   (a) KOHLER (U.S. Reg. No. 3,744,769) for interior design services;

   (b) KOHLER (U.S. Reg. No. 590,052) for internal combustion engines for driving generators and general power application; and

   (c) KOHLER (U.S. Reg. No. 3,285,677) for furniture, cabinets, furniture parts, namely countertops, console tables, tables, mirrors, shelves, and bathroom vanity units incorporating basins.

True and correct copies of the above-referenced KOHLER trademark registration certificates as maintained by the United States Patent and Trademark Office (the "USPTO") are collectively attached hereto as **Exhibit 1**.

13. As a result of its continuous commercial use of the KOHLER mark since the late 1800's, the KOHLER mark has become distinctive in the United States and throughout the world. Moreover, the marks in the KOHLER FAMILY are famous and therefore enjoy liberal protection under the Paris Convention.

14. Kohler has spent millions of dollars to advertise and promote the KOHLER FAMILY in print and broadcast media, as well as on the Internet through Kohler's website, which is accessible throughout the United States and around the world at <kohler.com>. A true and correct copy of the home page for Kohler's website is attached hereto as **Exhibit 2**.

15. Based upon its federal trademark registrations and extensive commercial use of the KOHLER FAMILY, Kohler owns the exclusive right to use the KOHLER mark in connection with, among other goods and services, engines, generators, and interior design products and services.

16. Purchased by Kohler in 1989, Ann Sacks is a wholly owned subsidiary of Kohler and is recognized by consumers as a member of the Kohler family of brands.

17. Ann Sacks is an industry leader in providing luxury tile, stone, mosaics, plumbing products and bath furnishings, which Ann Sacks distributes, markets, promotes, and, through different suppliers, manufactures in over ten countries, twenty-one company-owned showrooms, and a variety of independent dealers located throughout the United States, Canada, and Asia.

18. Ann Sacks is the owner of multiple United States trademark and service marks, which incorporate the element ANN SACKS, including:

    a. ANN SACKS (U.S. Reg. No. 2,915,073) for plumbing products and fixtures; and

b. ANN SACKS (U.S. Reg. No. 3,221,777) for retail services in the fields of plumbing products and fixtures.

True and correct copies of the above-referenced ANN SACKS trademark registration certificates as maintained by the United States Patent and Trademark Office are collectively attached hereto as **Exhibit 3**.

19. Ann Sacks has spent millions of dollars advertising and promoting the ANN SACKS mark in print and broadcast material, and on the Internet through Ann Sacks' website, which is accessible in the United States and around the world at <annsacks.com>. A true and correct copy of the home page for Ann Sacks' website is attached hereto as **Exhibit 4**.

20. The ANN SACKS mark has become distinctive in the United States and throughout the world for tile, stone, plumbing products.

21. Based upon its federal trademark and extensive commercial use, Ann Sacks owns the exclusive right to use the ANN SACKS mark in connection with tile, stone, and plumbing products. Additionally, the ANN SACKS mark is famous and therefore enjoys liberal protection under the Paris Convention.

**B. Defendants' Bad-Faith Registration, Use and Trafficking of the Infringing Domain Names**

22. On or about September 17, 2010, Sun registered <kohlerco.in> with A to Z Domains Solutions Pvt. Ltd., a registrar for domain names.

23. On or about January 11, 2011, Sun registered <kohlerpower.info> with GoDaddy.com Inc., a registrar for domain names.

24. On or about January 16, 2011, Sun registered <kohlerinteriors.us> and <annsacks.us> with GoDaddy.com, Inc., a registrar for domain names.

25. On or about January 22, 2011, Sun registered <kohlerinteriors.info> with GoDaddy.com Inc., a registrar for domain names.

26. On information and belief, Sun registered the Infringing Domain Names at the direction of Doe and on behalf of himself, Doe, and Domainjet.

27. The domain name <kohlerco.in> contains the entirety of the KOHLER mark and the abbreviation for "company," which together compromise the name under which Kohler operates and is known to the public.

28. The <annsacks.us> Infringing Domain Name contains the entirety of the ANN SACKS mark and is the name under which Ann Sacks operates and is known to the public.

29. The domain names <kohlerinteriors.info> and <kohlerinteriors.us> contain the entirety of the KOHLER mark and the descriptive term "interiors," which describes the type of goods, design products, and services Kohler offers under the KOHLER mark.

30. The domain name <kohlerpower.info> contains the entirety of the KOHLER mark and the descriptive term "power," which describes the type of generators and engines that Kohler offers under the KOHLER mark.

31. Sometime after registering the Infringing Domain Names, Defendants began using the Infringing Domain Names to redirect Internet traffic to their own websites, which advertise and offer for sale goods that compete with those offered by Plaintiffs under the KOHLER and ANN SACKS marks (collectively, "Plaintiffs' Marks"). True and correct copies of screenshots of the websites associated with the Infringing Domain Names advertising competing goods are collectively attached hereto as **Exhibit 5**.

32. Upon information and belief, based in part on the information contained on the websites associated with the Infringing Domain Names, Defendants receive revenue 1) each time an Internet user accesses any of the websites, and 2) each time an Internet user clicks on any of the links appearing on any of the websites.

33. Defendants used and are using the Infringing Domain Names in a commercial manner to attract Internet users to their websites by creating a likelihood of confusion with Plaintiffs' Marks as to the source, sponsorship, affiliation, and/or endorsement of Defendants' websites or location.

34. On December 20, 2010, Kohler contacted Defendant Domainjet regarding the infringing registration and use of the domain name <kohlerengines.in>, which is not at issue in the present suit.

35. Sun, acting on behalf of the Defendants, demanded one thousand dollars ($1,000.00) to cease using <kohlerengines.in> and to transfer its registration to Kohler.

36. Kohler agreed to pay Defendants five hundred dollars ($500) in exchange for the transfer of the domain name <kohlerengines.in> along with written assurances that Defendants would not register or use any other domain names consisting in whole or in part of the KOHLER mark.

37. On January 3, 2011, Defendants accepted Kohler's offer and transferred the domain name <kohlerengines.in> on January 13, 2011. Once the transfer had been completed, Kohler released the $500 to an escrow account accessible by Defendants.

38. Shortly after the transfer of <kohlerengines.in> from Defendants to Kohler, Kohler discovered that Defendants, despite their prior assurances, had registered and begun using the following Infringing Domain Names: <kohlerinteriors.info>, <kohlerinteriors.us>, <kohlerpower.info>, and <annsacks.us>.

39. Defendants subsequently demanded that Kohler pay them one thousand dollars ($1,000.00) for Defendants to cease using and to transfer <kohlerinteriors.info>, <kohlerinteriors.us>, <kohlerpower.info>, and <annsacks.us> to Kohler.

40. By registering and using Infringing Domain Names containing Plaintiffs' Marks, Defendants were and are attempting to trade on the goodwill of Plaintiffs.

41. By registering and using Infringing Domain Names containing Plaintiffs' Marks, Defendants were and are attempting to create an association between the Infringing Domain Names and Plaintiffs' marks.

42. Defendants registered multiple domain names which they knew were identical or confusingly similar to Plaintiffs' Marks.

COMPLAINT FOR REGISTRATION OF INFRINGING DOMAIN NAMES            CHI 61,441,267v1 8-2-11

43. Defendants have used and continue to use for commercial gain the Infringing Domain Names to divert Internet users searching for the famous or distinctive trademarks of KOHLER and ANN SACKS.

44. Defendants have used and continue to use each of the Infringing Domain Names to advertise goods or services that are identical, directly competitive and/or closely related to those sold or provided in connection with the famous or distinctive trademarks of Plaintiffs.

45. Defendants have no trademark or other intellectual property rights in the Infringing Domain Names.

46. Plaintiffs have not authorized Defendants to use in any way, or register as part of any Internet domain name, any of Plaintiffs' Marks.

47. Defendants have no prior, non-infringing use of the Infringing Domain Names in connection with the bona fide offering of any goods or services.

48. No reasonable grounds exist for Defendants to believe that their registration or use of the Infringing Domain Names was fair or otherwise lawful.

49. Defendants registered the Infringing Domain Names with the bad-faith intent to profit from Plaintiffs' Marks.

**C.  Defendants Have Engaged in a Pattern and Practice of Registering Domain Names of Famous or Distinctive Trademarks Owned by Others**

50. In addition to the registration of the Infringing Domain Names, Defendants have registered over three thousand two hundred (3,200) domain names, many of which contain marks that are identical or confusingly similar to famous or distinctive trademarks owned by other third parties ("Defendants' Portfolio"). Examples of domain names in Defendants' Portfolio include, but are not limited to, the following: <abercrombiefitch.in>, <anneklein.in>, <burberryjewelry.com>, <calvinkleinbeauty.com>, <cuisinart.co.in>, <deutschebankgroup.com>, <ebaydeals.cn>, <googleshopping.in>, <jcrew.co.in>, <lacostegolf.com>, <meijer.co.in>, <minutemaid.co.in>, <neosporin.cn>, <nikesportswear.in>, <ninewest.co.in>,

7

<nissen.co.in>, <oldsmobile.co.in>, <skechers.in,saucony.info>, <urbanoutfitters.info>, <volkswagengroup.in>, <walgreens.co.in>, <wellsfargoadvisors.com.cn>, <worldmarket.co.in>, <yamaha-motor.in>. A true and correct inventory of Defendants' Portfolio is attached hereto as **Exhibit 6.**

51. Defendants' continued practice of registering domain names containing marks that are identical or confusingly similar to famous or distinctive marks demonstrates a bad-faith pattern and practice of intent to profit off the recognition and reputation of Plaintiffs and others.

52. In addition to the harm suffered by Plaintiffs, Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an inherent interest in being free from confusion, mistake, and deception on the Internet.

53. Upon information and belief, Defendants do not have assets sufficient to satisfy a judgment against them should this Court find the Defendants liable as alleged herein.

54. Upon information and belief, Defendants' Portfolio represents all, if not nearly all, of Defendants' assets.

## FIRST CLAIM FOR RELIEF

**(Registering the Infringing Domain Names in Violation of 15 U.S.C. § 1125(d))**

55. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

56. Sun, Doe and Domainjet, collectively and individually, registered each of the Infringing Domain Names on behalf of Defendants. Sun is the current registrant of record for the Infringing Domain Names. True and correct copies of the WHOIS records for each Infringing Domain Names are collectively attached hereto as **Exhibit 7.**

57. The Infringing Domain Names are identical or confusingly similar to Plaintiffs' Marks.

58. Plaintiffs' federally-registered marks were all distinctive and/or famous within the meaning of subsection 15 U.S.C. § 1125(c) at the time Defendants registered the Infringing Domain Names.

59. Defendants registered the Infringing Domain Names with the intent to divert consumers from Plaintiffs' websites for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the websites associated with the Infringing Domain Names.

60. Defendants registered the Infringing Domain Names with a bad-faith intent to profit from Plaintiffs' Marks.

61. Defendants have registered or acquired multiple domain names that Defendants knew were identical or confusingly similar to marks of Plaintiffs, which were distinctive when the Infringing Domain Names were registered.

62. As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

63. Defendants' registration of the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

64. By reason of Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

65. By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages in an amount up to one hundred thousand dollars ($100,000.00) for each Infringing Domain Name, at Plaintiffs' election.

66. In addition, Plaintiffs are entitled to an order transferring the Infringing Domain Names from Defendants to Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(C).

67. Defendants' intentional conduct makes this an exceptional case under 15 U.S.C. § 1117, and therefore, Plaintiffs are entitled to an award of their attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Using the Infringing Domain Names in Violation of 15 U.S.C. § 1125(d))

68. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 67 as if fully set forth herein.

69. The Infringing Domain Names are identical or confusingly similar to Plaintiffs' Marks.

70. Plaintiffs' federally registered marks were all distinctive and/or famous within the meaning of 15 U.S.C. § 1125(c) at the time Defendants registered the Infringing Domain Names.

71. Defendants registered the Infringing Domain Names with a bad-faith intent to profit from Plaintiffs' Marks.

72. The Infringing Domain Names do not consist of the legal name of any of the Defendants nor do the Infringing Domain Names consist of a name that is otherwise commonly used to identify the Defendants.

73. Defendants have never used the Infringing Domain Names in connection with the bona fide offering of any goods or services.

74. Defendants registered the Infringing Domain Names to divert consumers from Plaintiffs' websites to websites associated with the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the websites.

75. Defendants have used and continue to use each of the Infringing Domain Names for websites that display advertising links to commercial websites, which offer goods or services that are identical, directly competitive or closely related to those sold or provided in connection with the famous or distinctive trademarks of Plaintiffs.

76. When Internet users click on the displayed links on the websites, Defendants receive payment from one or more advertisers, search engines, or affiliate programs.

77. Plaintiffs have not authorized Defendants to use in any way, or register as part of any Internet domain name, any of Plaintiffs' Marks.

78. As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

79. Defendants' registration of the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

80. By reason of Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

81. By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages in an amount up to one hundred thousand dollars ($100,000) for each Infringing Domain Name, at Plaintiffs' election.

82. Defendants' intentional conduct makes this an exceptional case under 15 U.S.C. § 1117, and therefore, Plaintiffs are entitled to an award of their attorneys' fees.

## THIRD CLAIM FOR RELIEF

**(Trafficking the Infringing Domain Names in Violation of 15 U.S.C. § 1125(d))**

83. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 82 as if fully set forth herein.

84. The Infringing Domain Names are identical or confusingly similar to Plaintiffs' Marks.

85. Plaintiffs' federally registered marks were all distinctive and/or famous within the meaning of 15 U.S.C. § 1125(c) at the time Defendants registered the Infringing Domain Names.

86. Defendants registered the Infringing Domain Names with a bad-faith intent to profit from Plaintiffs' Marks.

87. Defendants registered the Infringing Domain Names to divert consumers from Plaintiffs' websites to a websites associated with the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website.

88. Defendants, in exchange for payment, offered to transfer, sell, or otherwise assign the Infringing Domain Names to Plaintiffs, rightful owners of the marks, without having used, or having an intent to use, the domain names in the bona-fide offering of any goods or services.

89. Defendants, in exchange for payment, offered to transfer, sell, or otherwise assign the Infringing Domain Names to the third parties without having used, or having an intent to use, the domain name in the bona-fide offering of any goods or services.

90. Defendants have on multiple occasions offered to transfer, sell, or otherwise assign the Infringing Domain Names to Plaintiffs and/or third parties, indicating a pattern of such conduct.

91. As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

92. Defendants' registration of the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

93. By reason of Defendants' acts alleged herein, Plaintifs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

94. By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory

1 damages in an amount up to one hundred thousand dollars ($100,000) for each Infringing Domain Name, at Plaintiffs' election.

95. Defendants' intentional conduct makes this an exceptional case under 15 U.S.C. § 1117, and therefore, Plaintiffs are entitled to an award of their attorneys' fees.

### FOURTH CLAIM FOR RELIEF

### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

96. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 95 as if fully set forth herein.

97. Defendants used and are using in commerce the Infringing Domain Names, which contain Plaintiffs' Marks.

98. The Infringing Domain Names are confusingly similar to Plaintiffs' Marks.

99. Defendants' use in commerce of Plaintiffs' Marks for goods and services sold by Defendants, and Defendants' use of the Infringing Domain Names and associated websites as identified herein, constitute a reproduction, copying, counterfeiting, and colorable imitation of Plaintiffs' Marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

100. By using Plaintiffs' Marks with the knowledge that Plaintiffs own, have used, and continue to use their trademarks across the United States and around the world, Defendants have intended to cause confusion, cause mistake, and/or deceive customers.

101. Defendants are using marks identical to Plaintiffs' Marks in connection with the sale, offering for sale, or advertising of services in a manner that is likely to cause confusion, or to cause mistake, or to deceive consumers as to affiliation, connection, or association with Kohler or Ann Sacks as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiffs.

102. Defendants' use of Plaintiffs' Marks and/or marks confusingly similar to Plaintiffs' trademarks has created a likelihood of confusion among consumers who may falsely believe that Defendants' businesses or websites are associated with Plaintiffs'

1  goods or services, or that Plaintiffs sponsor or approve of Defendants' goods, services, or
2  commercial activities, when in fact they do not.

3  103. As a direct and proximate result of Defendants' infringement, Plaintiffs have
4  suffered, and will continue to suffer, monetary loss and irreparable injury to their
5  business, reputation, and good will.

6  104. By reason of Defendants' willful acts, Plaintiffs are entitled to recover
7  Defendants' profits, Plaintiffs' damages, as well as the costs of this action pursuant to 15
8  U.S.C. § 1117.

9  105. By reason of Defendants' willful acts, Plaintiffs are entitled to trebled
10 damages pursuant to 15 U.S.C. § 1117(b).

11 106. Defendants' intentional conduct makes this an exceptional case under 15
12 U.S.C. § 1117, and therefore, Plaintiffs are entitled to an award of their attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Dilution in Violation of 15 U.S.C. § 1125(c))

15 107. Plaintiffs reallege and incorporate by reference the allegations in paragraphs
16 1 through 106 as if fully set forth herein.

17 108. Plaintiffs' Marks are famous, as that term is used in 15 U.S.C. § 1125(c),
18 and they were famous before Defendants' use of Plaintiffs' Marks and variations thereof
19 in commerce, based on, among other things, the inherent distinctiveness and federal
20 registration of Plaintiffs' Marks and the extensive, and exclusive nationwide use,
21 advertising, promotion, and recognition of Plaintiffs' Marks.

22 109. Defendants' use of Plaintiffs' Marks and variations thereof in commerce is
23 likely to cause dilution by blurring or dilution by tarnishment of Plaintiffs' Marks.

24 110. By using Plaintiffs' Marks with the knowledge that Plaintiffs own, have
25 used, and continue to use their trademarks across the United States and around the world,
26 Defendants have intended to trade on the recognition of Plaintiffs' famous marks and
27 Defendants have intended to harm the reputation of Plaintiffs' famous marks.

28

111. The above-described acts of Defendants constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Plaintiffs to relief.

112. As a direct and proximate result of Defendants' acts, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' marks and have suffered and will continue to suffer irreparable harm.

113. By reason of Defendants' willful acts, Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117.

114. Defendants' intentional conduct makes this an exceptional case under 15 U.S.C. § 1117, and therefore, Plaintiffs are entitled to an award of their attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For a preliminary and permanent injunction prohibiting Defendants Domainjet, Inc., Jack Sun, John Doe, and any of their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from: (1) using Plaintiffs' trademarks, service marks, or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce, or in connection with any business, or for any other purpose (including, but not limited to, on websites and in domain names); (2) registering, owning, leasing, selling, or trafficking in any domain name containing Plaintiffs' trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B. For an Order requiring Defendants to transfer the Infringing Domain Names to Kohler Company;

C. For a permanent injunction requiring the domain name registrar for <kohlerco.in>, currently A to Z Domains Solutions Pvt. Ltd., to change the

           registrant of record for the <kohlerco.in> domain name from its current registrant of record to Kohler Company;

D. For a permanent injunction requiring the domain name registrar for <kohlerinteriors.info>, <kohlerinteriors.us>, <kohlerpower.info>, and <annsacks.us>, currently GoDaddy.com, Inc., to change the registrant of record for the <kohlerinteriors.info>, <kohlerinteriors.us>, <kohlerpower.info>, and <annsacks.us> domain names to Kohler and to move such domains into GoDaddy account "GTUDRP;"

E. For an award of statutory damages in the amount of one hundred thousand dollars ($100,000) for each registration by Defendants of each Infringing Domain Name in violation of the ACPA, for a total award of five hundred thousand dollars ($500,000);

F. For an award of statutory damages in the amount of one hundred thousand dollars ($100,000) for Defendants' use of each Infringing Domain Name in violation of the ACPA, for a total award of five hundred thousand dollars ($500,000);

G. For an award of statutory damages in the amount of one hundred thousand dollars ($100,000) for Defendants' trafficking of each Infringing Domain Name in violation of the ACPA, for a total award of five hundred thousand dollars ($500,000);

H. For an Order requiring Defendants to pay to Plaintiffs all profits obtained from, or damages caused to Plaintiffs by, Defendants' use of Plaintiffs' Marks, and that such amounts be trebled for Defendants' willful infringement of Plaintiffs' Marks;

I. For an Order authorizing the sheriff for the County of San Diego to conduct a sale of Defendants' Portfolio (attached as **Exhibit 6**), the proceeds of which shall go to Plaintiffs up to the amount necessary to satisfy any judgment entered against Defendants in this case;

COMPLAINT FOR REGISTRATION OF INFRINGING DOMAIN NAMES    CHI 61,441,267v1 8-2-11

J.   For an award of interest, costs and attorneys' fees incurred by Plaintiffs in prosecuting this action; and

K.   For all other relief to which Plaintiffs are entitled.

DATED:  August 8, 2011                    GREENBERG TAURIG, LLP

                                          By: _____ Robert E. Adel for
                                          Daniel S. Rubenstein
                                          William Q. Tran
                                          Attorneys for Plaintiffs KOHLER
                                          COMPANY and ANN SACKS
                                          TILE AND STONE, INC.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs Kohler Company and Ann Sacks Tile and Stone, Inc. hereby demand a trial by jury on all issues triable by jury.

DATED:  August 8, 2011                    GREENBERG TRAURIG, LLP

                                          By: _____ Robert E. Adel for
                                          Daniel S. Rubenstein
                                          William Q. Tran
                                          Attorneys for Plaintiffs KOHLER
                                          COMPANY and ANN SACKS
                                          TILE AND STONE, INC.